**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CAROL NEGRON, EXECUTRIX, et al.,** | ) | **CASE NO.  1:05CV2305** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **JUDGE ANN ALDRICH** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM AND ORDER** |

On September 29, 2006, plaintiff Carol Negron ("Negron"), Executrix for the estate of Mary A. Susteric ("Susteric") and the Estate of Mildred Lopatkovich ("Lopatkovich"), filed a complaint in the United States District Court for the Northern District of Ohio, Eastern Division, against the United States of America ("the Government"), alleging an improper tax assessment on lottery winnings after the death of Susteric and Lopatkovich. (Doc. No. 1.)

On July 10, 2006, the Government filed a motion for summary judgment (Doc. No. 17) and Negron filed a motion for partial summary judgment (Doc. No. 18).  On August 10, 2006, the Government and Negron filed briefs in opposition to the other's motion. (Doc. No. 19, 20.)

All issues have been fully briefed and are ripe for adjudication.  For the following reasons, the court denies the Government's motion, and grants Negron's motion in part.

## I.  FACTUAL BACKGROUND

On April 24, 2006, both parties filed a proposed stipulation of facts for the purposes of summary judgment. (Doc. No. 9.)  On January 19, 1991, decedents Lopatkovich and Susteric, and one other person, jointly won the Ohio Super Lotto jackpot prize, and received the first of 26 annual payments of $256,410.26 from the State of Ohio.  The remaining lottery payments for each estate

could not be assigned or used as collateral by the decedents.

On November 27, 2001, Lopatkovich died. At the time of her death, Lopatkovich was a resident of Lorain, Ohio. Negron was appointed executrix of her estate by the Lorain County Probate Court. Her federal estate tax return, filed on August 28, 2002, reported a tax due of $772,172.00. On Schedule F, Item 2 of her estate tax return, the estate disclosed the remaining 15 annual payments due from the state of Ohio as an asset of the estate. The estate valued that asset at $2,275,867.00, based upon the amount it received as a lump sum distribution from the Ohio Lottery Commission who used a 9.0% discount rate in computing the amount of such a distribution. The actual amount of the distribution, which was made to the estate as the result of the estate having timely exercised an election available to it under existing Ohio Lottery regulations, was the net amount of $1,547,045.00, the difference between the gross and net amount being withholding for federal and Ohio income taxes.

Subsequently, the Internal Revenue Service ("IRS") audited the estate's tax return and determined the value of the 15 remaining annual payments to be $2,775,209.00 based on the IRS annuity tables found in section 7520 of the Internal Revenue Code. As a result of the IRS audit changes made to Lopatkovich's estate tax, the estate's tax liability was increased by $330,302.00. On October 8, 2004, Lopatkovich's estate paid this additional tax plus an increase in estate tax of $36,995.00, for a total of $367,297.00.

On December 9, 2004, the estate filed a refund claim for $161,581.00, which was denied on March 18, 2005. This suit followed.

On October 30, 2001, Susteric died. At the time of her death, Susteric was a resident of Lorain, Ohio. Negron was appointed executrix of her estate by the Lorain County Probate Court.

Her federal estate tax return, filed on July 29, 2002, reported a tax due of $949,872.00. On Schedule F, Item 2 of her estate tax return, the estate disclosed the remaining 15 annual payments due from the state of Ohio as an asset of the estate. The estate valued that asset at $2,275,867.00, based upon the amount it received as a lump sum distribution from the Ohio Lottery Commission who used a 9.0% discount rate in computing the amount of such a distribution. The actual amount of the distribution, which was made to the estate as the result of the estate having timely exercised an election available to it under existing Ohio Lottery regulations, was the net amount of $1,547,045.00, the difference between the gross and net amount being withholding for federal and Ohio income taxes.

Subsequently, the Internal Revenue Service ("IRS") audited the estate's tax return and determined the value of the 15 remaining annual payments to be $2,668,118.00 based on the IRS annuity tables found in section 7520 of the Internal Revenue Code. As a result of the IRS audit changes made to Susteric's estate tax, the estate's tax liability was increased by $141,175.00. On June 26, 2004, Susteric's estate paid this additional tax plus an increase in estate tax of $7,193.00, for a total of $148,368.00.

On December 9, 2004, the estate filed a refund claim for $178,461.00, which was denied on March 18, 2005. This suit followed.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." *Humenny*, 390 F.3d at 904 (internal quotation omitted).

**A. Annuity**

Before the court is an interesting, if unique, legal situation that has resulted in a circuit split among the courts. Specifically at issue is how to value the remaining lottery payments for a decedent's estate under section 7520 of the tax code. That is, does the tax code annuity table account for the fact that the estates' right to receive the annual lottery payments was a non-marketable asset? At the most fundamental level, the Government argues that section 7520 does account for non-

marketability, whereas the estates argue that it does not. Therein lies the rub.

## B. The Estate Tax

IRC §2031 imposes a tax on the "taxable estate of every decedent who is a citizen or resident of the United States." IRC §2051 defines the "taxable estate" as the value of the "gross estate," as determined under IRC §2031, minus any applicable deductions. In general, all assets included in a decedent's estate are valued at their "fair market value," at the time of a decedent's death. IRC §2031. The "fair market value" of property is measured by "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Treas. Reg § 20.2031-1(b) Furthermore, Reg. § 20.2031-7(d)(1) states that for decedents whose valuation date is on or after May 1, 1999, and except as otherwise provided in Reg. §§ 20.2031-7(b) and 20.7520-3(b), the value of an annuity for estate tax purposes is the present value determined by using the tables in IRC §7520. The parties do not contest that the application of the §7520 annuity tables results in values of $2,668,118.00 for the Susteric lottery winnings and $2,775,209.00 for the Lopatkovich lottery winnings.

## B. Circuit Split

The Courts of Appeals for the Second and Ninth Circuits have concluded that the annuity tables do no accurately reflect the fair market value of future lottery payments because the tables fail to account for the annuities' lack of marketability. *See Shackleford v. United States*, 262 F.3d 1028 (9th Cir. 2001); *Estate of Gribauskas v. Comm'r of Internal Revenue*, 342 F.3d 85(2d Cir. 2003).

The Court of Appeals for the Fifth Circuit, meanwhile, concluded that the lottery annuity payments are properly valued by reference to the IRC annuity tables. *Cook v. Comm'r of Internal*

*Revenue*, 349 F.3d 850 (5th Cir. 2003); *Estate of Donovan v. United States*, 2005 WL 958403 (D. Mass. April 26, 2005); *Anthony v. United States*, 2005 WL 1670697 (M.D. La. June 7, 2005).

Although the general rule for estate taxes provides that the annuity must be valued by reference to the IRC annuity tables, there is a notable exception:

> The applicability of the annuity tables is not, however, unassailable. They must be used to value annuities unless it is shown that the result is so unrealistic and unreasonable that either some modification in the prescribed method should be made, or complete departure from the method should be taken, and a more reasonable and realistic means of determining value is available.

*Estate of Cook*, 349 F.3d at 854 (citations and internal punctuation omitted). When departing from the annuity tables, however, the plaintiff bears a substantial burden of demonstrating that: (1) the value ascribed by the tables is unrealistic and unreasonable; and (2) there is a more reasonable and realistic means by which to determine its fair market value. *See Shackleford*, 262 F.3d at 1032, citing *O'Reilly*, 973 F.2d 1403 at 1408 ("because the table-produced valuation is presumed correct, the party who desires to use an alternative method to value an estate's interest bears the 'considerable burden of proving that the tables produce such an unrealistic and unreasonable result that they should not be used.'").

Ultimately, this court is more convinced by the reasoning of the Second and Ninth Circuits on this issue. To wit, it makes fundamental economic sense that the transferability of an annuity would affect its fair market value. *See Shackleford*, 262 F.3d at 1032 ("It is axiomatic that if an asset's marketability is restricted, it is less valuable than an identical marketable asset."). Therefore, the court finds that Negron successfully demonstrates that the value ascribed by the annuity tables for both estate taxes is "unrealistic and unreasonable." It appears that due to the bifurcated nature of the expert discovery, there has yet to be any testimony by experts *in this case* regarding a more

reasonable means to calculate the fair market value. Negron fails to satisfy the second element of the exception to applying the annuity tables; that there is a more reasonable and realistic means to determine the fair market value.

### III. CONCLUSION

For the aforementioned reasons, the court denies the Government's motion for summary judgment (Doc. No. 17), and grants Negron's motion in part (Doc. No. 18). The court grants Negron's motion with respect to the issue of whether the annuity table produces such unrealistic and unreasonable results. The court is convinced that it does in this instance. What remains to be established is whether a more realistic and reasonable means is available to determine the value of the annuity.

The court instructs the parties to confer and submit a joint position statement by Friday, June 22, 2007, suggesting new deadlines for expert discovery, dispositive motion deadlines, and a new backup trial date.

IT IS SO ORDERED.

                                             */s/ Ann Aldrich*
                                             ANN ALDRICH
                                             UNITED STATES DISTRICT JUDGE

Dated: June 4, 2007